11th Court of Appeals
Eastland, Texas
Opinion
 
Clinton Dale Shelton
            Appellant
Vs.                  Nos. 11-01-00056-CR & 11-01-00057-CR -- Appeals from Dallas County
State of Texas
            Appellee
 
            Michael Hierro and his wife, Marissa, were ambushed at their home on the evening of
December 20, 1999. Upon exiting their car, Michael was shot and killed. Marissa ran; the assailant,
a stocky white man wearing a dark mask, chased her. A female voice called out, “[S]hoot her, shoot
her.” Marissa recognized the voice as that of Catherine Shelton, her former employer. Marissa was
shot and severely wounded. Playing dead, Marissa heard the assailants arguing about shooting her
again. Marissa recognized the voice of the other assailant as that of Clinton Dale Shelton, appellant. 
            The jury found appellant guilty of the murder of Michael in Cause No. 11-01-00057-CR and
sentenced him to life imprisonment plus a $10,000 fine. The jury also found him guilty of the
aggravated assault of Marissa in Cause No. 11-01-00056-CR and sentenced him to 20 years
confinement and a $10,000. Appellant appeals. We affirm.
            Appellant asserts six points of error. Appellant contends that: (1) the trial court’s admission
of hearsay violated his rights to confrontation, cross-examination, and due process; (2) the trial
court’s failure to order production of the relevant portions of the portable toilet violated his rights
to cross-examination and due process; (3) the State’s failure to disclose the contradictory statements
of the complaining witness violated his right to due process; (4) the trial court’s admission of a four-page document seized from his home denied him his right to be free from unreasonable searches and
seizures; (5) the trial court’s refusal to provide a hearing on his motion for new trial violated his right
to due process; and (6) the trial court’s denial of his motion for an instruction defining reasonable
doubt violated his right to due process. 
            Appellant does not challenge the sufficiency of the evidence. We will summarize all the
evidence in the light most favorable to the verdict. Jackson v. Virginia, 443 U.S. 307 (1979). 
            J. B. Rutherford, a Rowlett police officer, responded as a backup unit to 3000 Chaha Road
on the night of December 20. As he approached the Hierro’s Lexus which was still running with
both doors open, Officer Rutherford found a sawed-off shotgun on the sidewalk. After the crime
scene was sealed off, Officer Rutherford entered a portable toilet near the driveway of the Hierro’s
home. The portable toilet had been placed there by a construction company. Officer Rutherford
found rubber gloves and pantyhose in the portable toilet that appeared to be designed as a mask.
             John Donahue, a deoxyribonucleic acid (DNA) serology analyst for the Texas Department
of Public Safety, tested the pantyhose and found body fluids on the area where the mouth would have
been if the material was used as a mask. The DNA on the pantyhose matched appellant’s DNA.
            Appellant testified in the guilt/innocence phase of the trial. Appellant offered his version of
the facts to explain why the mask contained his DNA. Appellant stated that he was divorcing
Catherine and that he wanted Marissa to testify on his behalf. Appellant knew Marissa would not
be a willing witness. Appellant stated that he drove to the Hierro residence in Rowlett on several
prior occasions. Appellant explained that he was attempting to verify that Marissa lived at the
address so that he could subpoena her in his divorce case. 
            Appellant stated that he wore the mask on December 19. Appellant did this because he knew
that he was going to approach the house and that, if Marissa saw him, she might hide and avoid
service. Appellant testified that he wore the gloves because he did not want to leave fingerprints. 
Appellant explained that Marissa had access to fingerprinting equipment and that he did not want
to be accused of window peeping or trespassing. Appellant said that, when he could not see into the
house, he retraced his steps, stepped into the portable toilet, relieved himself, and threw the mask
and gloves into the receptacle. 
            Charles Walter Lakes services portable toilets for Browning Ferris, Inc. (BFI). Lakes
testified that he cleaned the portable toilet the morning of the murder. Lakes stated that, if the mask
and gloves were in the portable toilet the morning of the murder, the vacuum pump would have
disposed of these items. The mask and gloves would not have been left behind for police to find the
night of the murder.
            Mark Hardman, a detective with the Rowlett police department, was called to conduct
surveillance of appellant’s home in Copper Canyon on December 21, 1999. Detective Hardman
arrived at about 4:20 a.m. and took five trash bags from the home’s trash receptacle. Detective
Hardman found some men’s purple Hanes underwear in the trash. James Adams, a trace evidence
analyst, testified that two holes in the purple underwear were 6.3 centimeters apart, about the
distance between normal human eyes. 
            On December 28, Detective Hardman was still conducting surveillance on the Shelton home. 
David Nabors, a lieutenant with the Rowlett police department, assisted with another collection of
trash from the home and examined the contents. Lieutenant Nabors testified that the trash contained
31 pairs of pantyhose, some loose and some still in packages. This was prior to any release to the
press about the pantyhose mask found in the portable toilet. 
            Detective Hardman executed a search warrant on the Shelton home on December 29. Copies
of a letter were taken from the home. The letter, written by appellant, detailed appellant’s activities
on Monday, December 20, and Tuesday, December 21. Detective Hardman conducted surveillance
on appellant during much of the time described in the letter. He said that appellant’s letter was not
accurate about appellant’s activities. 
            Michael Smith, a forensic metallurgist, testified that he examined several saws seized from
the Sheltons’ home. One saw had re-sulfurized steel fragments on the blade consistent with the
barrel of the shotgun. 
            Marilyn Maria Craig Langston was Catherine’s accountant. In September 1999, she went
to the Shelton home to help Catherine set up her computer system. During this visit, she had dinner
with Catherine and appellant. Langston testified that, during dinner, Catherine told appellant that
she wished Marissa would just fall off the face of the earth or be dead. As Langston was leaving the
house, appellant told Langston that, if Marissa showed up on the property, Marissa would not leave.
            In his first point of error, appellant asserts that the statement made by Catherine to Langston
was inadmissable hearsay. We disagree. Catherine’s statement was admissible to show her then
existing state of mind. TEX.R.EVID. 803(3). The trial court did not abuse its discretion. Coffin v.
State, 885 S.W.2d 140, 149 (Tex.Cr.App.1994). Appellant’s first point is overruled.
            The State introduced photographs. In his second point of error, appellant argues that the
admission of the photograph of the service sticker located inside the door of the portable toilet, as
opposed to the actual sticker, violated the best evidence rule. The photographs revealed the cleaning
dates for the portable toilet and indicated that it was serviced the morning of the murder.
            TEX.R.EVID. 1002 provides that, to prove the content of a writing, the original writing is
required. However, a photograph is a duplicate. TEX.R.EVID. 1001(d) & 1003; Narvaiz v. State,
840 S.W.2d 415, 431 (Tex.Cr.App.1992). Duplicates are admissible unless a question is raised as
to the authenticity of the original. Rule 1003. 
            The officers testified that the photographs were taken on the following February after the
crime. The testimony identified the photographs, described the circumstances under which they were
taken, and reflected that the toilet and sticker appeared the same as they looked on the previous
December. 
            The night of the murder, Lakes watched the news and recognized the portable toilet. At trial,
Lakes identified a photograph of the portable toilet. The portable toilet was used for a nearby house
construction. Lakes said that he that had serviced this particular unit. When he had finished with
his cleaning, Lakes dated the sticker on the inside of the door to the portable toilet. Lakes identified
another picture as a photograph of the sticker that he had dated, December 20, 1999. Admission of
the photographs did not violate Rule 1002. Narvaiz v. State, supra at 431. Appellant’s second point
of error is overruled. 
            After Marissa had left Catherine’s employment, Marissa and Catherine had a meeting. At
this meeting, Marissa said that Catherine made threats, one of which was “Larry Robinson will kill
you.” Robinson was a former client of Catherine.
            During her stay at the hospital, Marissa was interviewed three times by Officer Jimmy
Patterson of the Rowlett police department. Officer Patterson said that two of the three interviews
had been terminated early because Marissa was in pain, on medication, and drowsy and fell asleep. 
During the second interview, Marissa mentioned the conversation with Catherine about Robinson. 
After the assault, the police investigated Robinson and eliminated him as a suspect.
            Appellant had filed a pretrial motion to produce exculpatory and mitigating evidence. The
State responded that Marissa made no formal statements. The State overlooked the interviews
Marissa had with Officer Patterson. Marissa testified that she did not remember two of the
interviews or making the “Robinson” statements to the officer. 
            After the direct examination of Marissa in the guilt/innocence phase, the state revealed the
statement about Robinson. Appellant’s trial counsel sought a delay to fully investigate Robinson and
his possible involvement. The trial court allowed counsel a few minutes to inspect the officer’s
notes. The cross-examination of Marissa continued. This was on a Thursday, and the trial was
continued until the following Monday.
            On Monday, appellant filed a motion for disclosure of identity and investigative information
of named assailant and for additional time to investigate. Appellant’s motion was denied. The State
offered to locate Robinson and bring him to court for appellant’s examination. Appellant’s trial
counsel had an opportunity to examine and use Officer Patterson’s notes in his cross-examination. 
There was no indication that Robinson was ever located or presented. 
            In his third point of error, appellant asserts that the State’s failure to disclose Marissa’s
contradictory statements violated his right to due process under the 14th amendment to the U.S.
Constitution. Appellant argues that Marissa’s statement about Robinson contradicts her testimony
identifying appellant as the assailant. A due process violation occurs when a prosecutor (1) fails to
disclose evidence, (2) favorable to the accused, (3) which creates a probability of a different
outcome. Wyatt v. State, 23 S.W.3d 18, 27 (Tex.Cr.App.2000), citing Thomas v. State, 841 S.W.2d
399, 404 (Tex.Cr.App.1992). 
            After considering all of the evidence, we do not find that Marissa’s reference to Robinson
was favorable to appellant or that it created the probability of a different outcome. Marissa identified
Catherine’s and appellant’s voices and physical appearances as belonging to the assailants. 
Appellant was the only male assailant present. His DNA matched that on the mask found at the
scene. Appellant’s third point is overruled.
            In his fourth point of error, appellant argues that the trial court’s admission of a four-page
letter seized from his home denied him his right to be free from unreasonable searches and seizures. 
The letter was written by appellant and described his activities during the days immediately
surrounding the time of the offenses. Appellant testified that he wrote the letter for one of
Catherine’s attorneys to provide an accounting of where the couple was on the Monday and Tuesday
of the week of the murder. Appellant’s trial counsel objected to the admission of the document
during trial.
            TEX. CODE CRIM. PRO. ANN. art. 18.02(10) (Vernon Supp. 2002) specifies that a search
warrant may be issued to search for and seize property or items, except the personal writings by the
accused, constituting evidence of an offense or constituting evidence tending to show that a
particular person committed an offense. However, third parties have the authority to consent to a
search when they have equal control over and equal use of the premises being searched. United
States v. Matlock, 415 U.S. 164, 172 (1974); Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Cr.
App.2002). The common authority derives from the mutual use of the property, not the ownership
or lack thereof. Maxwell v. State, supra at 281-82.
            When the officers arrived at the Shelton home to execute the search warrant, Catherine was
the only person home. Catherine told the officers conducting the search to make copies of anything
in the house and even explained how to use her fax machine to make copies. It is undisputed that,
at the time of the search, both Catherine and appellant were living in the home as husband and wife. 
Catherine had the authority to consent to the search. The fourth point is overruled.
            In his fifth point of error, appellant argues that the trial court’s refusal to hold a hearing on
his motion for new trial violated his right to due process. The trial court denied the motion without
a hearing on December 19, 2000. We review a trial court’s denial of a hearing on a motion for new
trial under an abuse of discretion standard. State v. Gonzalez, 855 S.W.2d 692, 695
(Tex.Cr.App.1993).
            The right to a hearing on a motion for new trial is not absolute. Torres v. State, 4 S.W.3d
295, 296 (Tex.App. - Houston [1st Dist.] 1999, no pet’n). In some instances, a defendant has the
right to a hearing on a motion for new trial when the motion raises matters that cannot be determined
from the record. Reyes v. State, 849 S.W.2d 812, 816 (Tex.Cr.App.1993). As a prerequisite to a
hearing, the motion for new trial must be supported by affidavit of the accused or someone else
specifically showing the truth of the grounds alleged as a basis for a new trial. Reyes v. State, supra
at 816. If the defendant’s motion and affidavit are sufficient, a hearing on the motion is mandatory. 
Reyes v. State, supra at 816.
            There is no affidavit attached to appellant’s motion for new trial. Instead, there is a
verification signed by appellant’s attorney which states: 
            I am the attorney for Clinton Dale Shelton and have been unable to converse
with my client since the trial of this matter as correctional officials transferred Mr.
Shelton to the TDCJ shortly after the trial of this matter, and; therfore (sic), I have
been unable to have Defendant sign this Motion for New Trial. However, I have read
the above and foregoing Motion For New Trial and all of the allegations of fact
contained therein are true and correct.
 
            A similar verification was found to be insufficient as an affidavit in support of a motion for
new trial in Alcott v. State, 26 S.W.3d 1 (Tex.App. – Waco 1999), aff’d, 51 S.W.3d 596
(Tex.Cr.App.2001). In Alcott, the verification read in part: “I prepared the foregoing
DEFENDANT’S MOTION FOR NEW TRIAL. I have personal knowledge of facts presented in this
motion and they are true and correct.” As in Alcott, the verification attached to the motion for new
trial is not a supporting affidavit. It lacks sufficient detail to put the trial court on notice that
reasonable grounds for relief existed. A hearing on the motion was not mandatory. Appellant’s fifth
point is overruled. 
            In his sixth point of error, appellant complains that the trial court denied his motion for an
instruction defining reasonable doubt. An instruction is not necessary. Paulson v. State, 28 S.W.3d
570, 573 (Tex.Cr.App.2000). The sixth point is overruled.
            The judgments of the trial court are affirmed.
 
                                                                                    PER CURIAM
 
July 25, 2002
Do not publish. See TEX.R.APP.P. 47.3(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.